UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR A.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. EDCV 21-01345-KK <br><br><br> MEMORANDUM AND ORDER |

Plaintiff Oscar A. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his application for Title II Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

///

///

///

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

## **PROCEDURAL HISTORY**

On July 2, 2014, Plaintiff filed an application for DIB, alleging a disability onset date of September 18, 2007. Administrative Record ("AR") at 229-30. Plaintiff's application was denied initially on August 25, 2014, id. at 103-14, and upon reconsideration on January 9, 2015. Id. at 116-27.

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 143-44. On July 12, 2017, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ.[2] Id. at 1235-63. A vocational expert also testified at the hearing. Id. at 1257-61. On September 18, 2017, the ALJ issued a decision denying Plaintiff's application for DIB. Id. at 13-32.

Plaintiff requested that the Agency's Appeals Council review the ALJ's decision. Id. at 226-27. On August 27, 2018, the Appeals Council denied Plaintiff's request for review. Id. at 1-6.

On October 24, 2018, Plaintiff filed an action in this Court seeking review of the ALJ's decision. Id. at 1293. On September 25, 2019, the Court reversed the ALJ's decision on the ground that the ALJ had not stated clear and convincing reasons, supported by substantial evidence, for rejecting the opinion of examining physician Dr. Leticia C. Amick ("Dr. Amick"). Id. at 1303-17. The Court, therefore, remanded the action to the Agency for further administrative proceedings. Id. at 1302.

On remand, a different ALJ held a telephonic hearing on Plaintiff's application on April 29, 2021. Id. at 1193-1234. Plaintiff appeared with counsel and testified at the hearing. Id. at 1195-1229. A vocational expert also testified at the hearing. Id. at 1229-32. On May 12, 2021, the ALJ issued a decision denying Plaintiff's application.

---

[2] The administrative record contains two transcripts of the hearing before the ALJ – one dated July 12, 2017, AR at 1235-63, and one dated August 7, 2017, id. at 33-67, 1418-55. The parties agree that the hearing occurred on July 12, 2017. ECF Docket No. 24, Joint Stipulation at 2 n.1.

Id. at 1172-91. Because Plaintiff did not file written exceptions to the hearing decision within thirty days of its issuance and the Appeals Council did not otherwise assume jurisdiction of the matter within sixty days, the ALJ's decision became the final decision of the Commissioner. See ECF Docket No. ("Dkt.") 1, Compl. ¶ 11; 20 C.F.R. § 404.984(d).

On August 10, 2021, Plaintiff filed the instant action. Dkt. 1, Compl. This matter is before the Court on the parties' Joint Stipulation ("JS"), filed on August 3, 2022. Dkt. 24, JS.

## II.
## PLAINTIFF'S BACKGROUND

Plaintiff was born on December 27, 1961, and his alleged disability onset date is September 18, 2007. AR at 229. He was forty-five years old on the alleged disability onset date, fifty-five years old at the time of the first hearing on his application for DIB, and fifty-nine years old at the time of the second hearing. Id. at 229, 1195, 1242. Plaintiff has a high school education. Id. at 1199. He also completed some junior college units and training at a computer learning center in 1986. Id. at 264, 1199. Plaintiff alleges disability based on carpal tunnel syndrome, sleep disorder, hypertension, diabetes, anxiety, depression, and pain in his neck, shoulders, elbows, and knees. Id. at 263, 1205, 1245-46.

## III.
## STANDARD FOR EVALUATING DISABILITY

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful

employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 404.1520. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[3]
4. Is the claimant capable of performing work he has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.
5. Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 404.1520(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual

---

[3] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for his verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

4

functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.

## **THE ALJ'S DECISION**

### A. STEP ONE

At step one, the ALJ found Plaintiff "did not engage in substantial gainful activity during the period from October 20, 2010 through his date last insured of March 31, 2013[.]"[4] AR at 1175.

///

///

---

[4] Plaintiff previously filed an application for DIB on July 25, 2008, alleging a disability onset date of September 17, 2007. AR at 86. The previously assigned ALJ issued a post-hearing decision denying Plaintiff's application on October 19, 2010. Id. at 86-97.

A final decision on a claimant's prior application for disability benefits has res judicata effect as to the period adjudicated in that decision. Lyle v. Sec. of Health & Hum. Servs., 700 F.2d 566, 568 (9th Cir. 1983). Here, the ALJ found the October 19, 2010 denial of Plaintiff's prior DIB application had res judicata effect as to the period adjudicated in that decision and properly considered only the period after the date of decision. AR at 1172.

In addition, when an ALJ has made a finding of nondisability on a claimant's prior application, a rebuttable presumption of continuing nondisability applies with respect to subsequent applications. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988). To overcome this presumption, the claimant must show "'changed circumstances' indicating a greater disability." Id. (quoting Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985)).

Here, with respect to the period not adjudicated under Plaintiff's previous application, the ALJ stated "there has not been a showing of a changed circumstance material to the determination of disability and the presumption of continuing nondisability has not been rebutted." AR at 1173. Nonetheless, the ALJ did not adopt the previous ALJ's findings in assessing Plaintiff's RFC and, instead, found Plaintiff had established limitations greater than those he had at the time of the prior denial. Compare AR at 1178 with AR at 90. It, therefore, appears the ALJ found Plaintiff had demonstrated changed circumstances indicating greater disability. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (finding presumption of nondisability rebutted by evidence of diagnosis of new impairment and evidence that previous impairment had become increasingly severe); Jerro v. Colvin, No. 2:15-CV-03775-DFM, 2016 WL 3606773, at *3 (C.D. Cal. July 5, 2016) (reversing and remanding for further consideration because ALJ's decision finding there were no changed circumstances was not supported by substantial evidence). Hence, while neither party addresses the issue in the Joint Stipulation, it appears the presumption of continuing nondisability is not applicable in this case.

5

**B.     STEP TWO**

At step two, the ALJ found Plaintiff had, through the date last insured, "the following severe impairments: degenerative disc disease (DDD) of the cervical and lumbar spine, left elbow arthritis, and depression[.]" Id.

**C.     STEP THREE**

At step three, the ALJ found Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Id. at 1176.

**D.     RFC DETERMINATION**

The ALJ found Plaintiff had the following RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; he can occasionally balance, stoop, kneel, crouch and crawl; he can do no activity requiring power gripping bilaterally or reaching above shoulder level; and he can do no more than simple, routine tasks.

Id. at 1178.

**E.     STEP FOUR**

At step four, the ALJ found Plaintiff "was unable to perform any past relevant work" through the date last insured. Id. at 1183.

**F.     STEP FIVE**

At step five, the ALJ found "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," including the jobs of "routing clerk" and "outside delivery." Id. at 1184.

The ALJ, therefore, concluded Plaintiff "was not disabled under sections 216(i) and 223(d) of the Social Security Act through March 31, 2013, the last date insured." Id. at 1185.

///

///

# V.
# PLAINTIFF'S CLAIMS

Plaintiff presents two disputed issues: (1) whether the ALJ properly considered the opinion of examining physician Dr. Amick, and (2) whether the ALJ properly considered Plaintiff's subjective complaints.[5] JS at 5, 17.

# VI.
# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's final decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720 (citation omitted); see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a 'specific quantum of supporting evidence'" (citation omitted)). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Terry v. Saul, 998 F.3d 1010, 1013 (9th Cir. 2021) ("Importantly, even where the evidence of record is susceptible to more than one rational interpretation, we must defer to the

---

[5] The Court finds the second issue dispositive of this matter and thus declines to address the remaining issue. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand.").

7

Commissioner's interpretation of the evidence." (internal quotation marks and citation omitted)).

The Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (citation omitted).

## VII.

## THE ALJ FAILED TO PROPERLY CONSIDER PLAINTIFF'S SUBJECTIVE COMPLAINTS

**A.  RELEVANT FACTS**

**1.  Plaintiff's Statements Regarding His Symptoms**

At the hearings before the ALJs,[6] Plaintiff testified regarding the symptoms he experienced through March 31, 2013, his date last insured. AR at 1204-16, 1218-24, 1227-29. Plaintiff stated he had daily pain in his neck, lower back, shoulders, elbows, and knees. Id. at 1245-47. Plaintiff stated he felt pain and stiffness in his hands when gripping or picking up objects as a result of his carpal tunnel syndrome. Id. at 1204, 1206, 1213, 1253. Plaintiff also testified he had difficulty remembering things and staying focused. Id. at 1227-28, 1254-56. In addition, due to his depression, Plaintiff stated he felt "very moody" and sometimes wanted "to shut off." Id. 1215-16.

Plaintiff also testified about the effect of his symptoms on his daily activities. Id. at 1204-06, 1208-10, 1212-14, 1218-22, 1224, 1247-51, 1253-54. For example, Plaintiff stated he had difficulty completing household tasks such as cutting fruit or

---

[6] An ALJ considers "all evidence in [the] case record," including testimony from prior hearings, when determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(3); see also Banks v. Barnhart, 434 F. Supp. 2d 800, 808 (C.D. Cal. 2006) (affirming ALJ's decision that claimant was not disabled when ALJ relied on testimony of vocational expert from prior hearing).

8

vegetables. Id. at 1205-06. He explained he "could sweep a little bit and vacuum a little bit" and could do yard work for "a little bit of time" if there was "not a lot of bending involved," but after five to ten minutes of such tasks, he would need to take a five-minute break to stretch his hands. Id. at 1212-14, 1218-19, 1224, 1253-54. Plaintiff stated picking up a gallon of milk or lifting ten pounds caused him pain and "stress on [his] elbow and [his] hand." Id. at 1210, 1253.

Plaintiff estimated he could not stand for more than thirty to sixty minutes or walk for more than thirty to forty-five minutes before needing a fifteen- to twenty-minute break to stretch, due to his stiffness and pain. Id. at 1208-10, 1220-23. He testified he used padding to sit upright, could not sit for more than thirty minutes at a time, and would "usually" lie down at home. Id. at 1210, 1247.

**2. The ALJ's Rejection of Plaintiff's Subjective Complaints**

The ALJ rejected Plaintiff's subjective complaints of physical impairment, reasoning (1) Plaintiff's daily activities during the period at issue "reflect a significant functional capacity," (2) Plaintiff received "mostly routine, conservative and non-emergency treatment," (3) Plaintiff's symptoms "improve[d] with treatment," and (4) the medical record does not support the extent of the pain and limitations Plaintiff has alleged.[7] AR at 1179, 1181.

**B. APPLICABLE LAW**

If "the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility[8] of the claimant's statements about the symptoms and their

---

[7] The ALJ also rejected Plaintiff's subjective complaints of mental impairment, reasoning his statements regarding his limitations are inconsistent with (1) the medical record, and (2) the level of activity indicated by his daily activities. AR at 1181. Because the ALJ improperly rejected Plaintiff's subjective complaints of physical impairment and this error was not harmless, the Court declines to address whether the ALJ provided sufficient reasons for rejecting Plaintiff's subjective complaints of mental impairment.

[8] Social Security Ruling ("SSR") 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from Social Security Administration "sub-regulatory policy" in order to "clarify that subjective symptom evaluation is not an

9

functional effect." Robbins, 466 F.3d at 883 (citations omitted). The ALJ's determination regarding the plaintiff's subjective complaints must be supported by "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks omitted).

The ALJ is required to engage in a two-step analysis. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant "has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014)). If the claimant meets the first step, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." Id. (quoting Garrison, 759 F.3d at 1014-15). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) (holding "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination").

"If the ALJ's credibility finding is supported by substantial evidence, [a court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, an ALJ's failure to give specific, clear, and convincing reasons to reject the claimant's testimony regarding the severity of the symptoms is not harmless, because it precludes the Court from conducting a meaningful review of the ALJ's reasoning. Brown-Hunter, 806 F.3d at 489.

---

examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [Social Security Administration] regulatory language regarding symptom evaluation." See SSR 16-3p, 2017 WL 5180304, at *1-*2, *10-*11.

## C.   ANALYSIS

Here, the ALJ found "[Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR at 28. Hence, because there is no evidence of malingering, the ALJ was required to provide "specific, clear, and convincing reasons" to properly reject Plaintiff's subjective complaints. Trevizo, 871 F.3d at 679.

As a preliminary matter, the ALJ did not identify which specific testimony she rejected beyond conclusorily stating "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR at 1179. The ALJ's failure to link specific testimony from Plaintiff to particular parts of the record supporting her rejection of Plaintiff's subjective complaints was error. See Brown-Hunter, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."). In addition, as discussed below, the ALJ failed to provide "specific, clear, and convincing reasons" for rejecting Plaintiff's subjective complaints of physical impairment. Trevizo, 871 F.3d at 679.

### 1.   Daily Activities

The ALJ relied on Plaintiff's daily activities in rejecting his subjective complaints of impairment. AR at 1179. However, Plaintiff's daily activities do not constitute a convincing reason supported by substantial evidence for rejecting Plaintiff's subjective complaints.

Evidence of a plaintiff's daily activities may be relevant to evaluating a plaintiff's subjective impairment testimony. See SSR 16-3p, 2016 WL 1119029, at *7; see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (holding that an ALJ can rely on testimony about a claimant's daily activities "to find a pain allegation incredible"). For example, a plaintiff's ability to engage in certain daily activities may be found to be inconsistent with her testimony of disabling symptoms. See Orn, 495 F.3d at 639.

However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted). Moreover, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair, 885 F.2d at 603 (citing Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984)). The law does not require Plaintiff to "vegetate in a dark room excluded from all forms of human and social activity" to be eligible for benefits. Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (citation omitted).

Here, the ALJ found Plaintiff was able to "sweep, vacuum, do yard work, walk the dog, rake[,] [] hold a shovel, walk to his sister's house, take his mother to the store, drive, watch television, take care of the dog, visit his brother, go to church occasionally, use a computer to check email, and go to sporting events." AR at 1179. The ALJ, however, fails to account for the limited nature and extent of the daily activities Plaintiff could perform. While Plaintiff testified he could sweep, vacuum, and do yard work "a little bit," he explained he could only use his hands for such tasks for about five to ten minutes before needing a five-minute break to stretch his hands due to pain and stiffness. Id. at 1212-13, 1218-20, 1253-54. While Plaintiff testified he could walk the dog and walk to his sister's house, he stated he only walked the dog up to two blocks, round trip, and his sister's house was just one block from his home. Id. at 1214-15, 1223-24, 1250. He further explained he could not walk more than thirty to forty-five minutes without taking a fifteen- or twenty-minute break to sit down and stretch to relieve stiffness and joint pain. Id. at 1221-23. While Plaintiff testified that he could drive, he also testified he could sit for no more than thirty minutes, using padding such as a cushion or towel, and experienced fatigue and difficulty staying focused when driving. Id. at 1210, 1247, 1251, 1256. While Plaintiff

1 testified that he attended sporting events, "a lot of times [he] wouldn't drive by
2 [him]self because it's good to have somebody there" to drive if he became fatigued.
3 Id. at 1251. In addition, while Plaintiff indicated he attended church, he also stated he
4 did not go "as often as [he] should." Id.

5       The ALJ fails to explain how any of Plaintiff's limited daily activities are
6 inconsistent with Plaintiff's claimed limitations. See Reddick, 157 F.3d at 722
7 (recognizing "disability claimants should not be penalized for attempting to lead
8 normal lives in the face of their limitations" and holding that "[o]nly if the level of
9 activity were inconsistent with Claimant's claimed limitations would these activities
10 have any bearing on Claimant's credibility"). Moreover, the ALJ does not discuss
11 how Plaintiff's ability to perform limited, occasional, and brief activities transfers to
12 work activity beyond the conclusory statement that "the physical and mental
13 capabilities requisite to performing many of the tasks described [] as well as the social
14 interactions replicate those necessary for obtaining and maintaining employment."
15 AR at 1179; see Fair, 885 F.2d at 603 (citing Gallant, 753 F.2d at 1453); see also Hicks
16 v. Colvin, No. 2:13-CV-09477-PLA, 2015 WL 1600419, at *10 (C.D. Cal. Apr. 9,
17 2015) (finding the amount of involvement Plaintiff described in activities, such as
18 volunteering at school, was minimal and the "ALJ does not explain how this level of
19 activity describes a person engaged in even basic work activity"). Ultimately,
20 Plaintiff's admitted daily activities are not inconsistent with his allegation of disability.
21 See Vertigan, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact
22 that a plaintiff has carried on certain daily activities, such as grocery shopping, driving
23 a car, or limited walking for exercise, does not in any way detract from her credibility
24 as to her overall disability.").

25       Accordingly, because Plaintiff's daily activities are not inconsistent with his
26 allegations of impairment, the ALJ's reliance on Plaintiff's daily activities does not
27 constitute a "specific, clear, and convincing reason[]" for rejecting Plaintiff's
28 subjective complaints. Trevizo, 871 F.3d at 679.

**2. Conservative Treatment**

In rejecting Plaintiff's subjective complaints of impairment, the ALJ stated "the claimant has received mostly routine, conservative, and non-emergency treatment." AR at 1179. Plaintiff's allegedly conservative treatment, however, does not constitute a convincing reason supported by substantial evidence for rejecting Plaintiff's subjective complaints.

The medical record demonstrates Plaintiff's treatment for the pain in his cervical and lumbar spine and upper and lower extremities was not conservative. The treatment records from 2010 to 2013 show Plaintiff received prescription pain medication, including naproxen (550 mg)[9] and Norflex,[10] trigger point injections, cervical epidural steroid injections, and lumbar epidural steroid injections.[11] Id. at 374-75, 380-81, 387, 398, 415-16, 422-23, 763-64, 770-71, 781-82, 784, 788, 797, 801, 804-05, 816, 821, 823, 867, 874-75, 877, 884, 892-93, 900-02, 905-06. Epidural steroid injections are not conservative treatment. See Garrison, 759 F.3d at 1015 n.20 ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."). Courts have refused to characterize treatment plans like Plaintiff's consisting of not only epidural steroid injections but also prescription pain medication as routine or conservative. See Christie v. Astrue, No. 2:10-CV-03448-PJW, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (finding that while pain treatment modalities such as narcotic pain medication and steroid injections "may not be the most aggressive available, like surgery, for example, they are certainly not what

---

[9] "Naprosyn (naproxen) is a nonsteroidal anti-inflammatory drug used to relieve pain, tenderness, swelling, and stiffness caused by arthritis, bursitis, tendinitis, and pain from other causes." Primero v. Astrue, No. 2:12-CV-01820-AJW, 2013 WL 394883, at *1 n.3 (C.D. Cal. Jan. 31, 2013).

[10] "Norflex is a muscular analgesic given for the relief of discomfort associated with acute, painful musculoskeletal conditions." Minor v. Comm'r of Soc. Sec., 513 F. App'x at 417, 420 n.6 (6th Cir. 2013).

[11] At the 2021 hearing before the ALJ, Plaintiff stated it has "been a while" since his treatment included prescription pain medication. AR at 1216-17. However, Plaintiff used naproxen through his date last insured. See id. at 910.

the Court would categorize as conservative"); Yang v. Barnhart, No. 5:04-CV-00958-PJW, 2006 WL 3694857, at *4 (C.D. Cal. Dec. 12, 2006) (finding ALJ's conclusion that claimant received conservative treatment was not supported by substantial evidence where the claimant was treated with several pain medications and received epidural injections).

Accordingly, the ALJ's claim that Plaintiff's treatment was conservative does not constitute a "specific, clear, and convincing reason[]" for rejecting Plaintiff's subjective complaints. Trevizo, 871 F.3d at 679.

### 3. Improvement with Treatment

The ALJ relied on her finding that Plaintiff had experienced "improvement with treatment" in rejecting Plaintiff's subjective complaints. AR at 1181. Plaintiff's alleged improvement with treatment, however, does not constitute a convincing reason supported by substantial evidence for rejecting Plaintiff's subjective complaints, because the ALJ misrepresented the record.

The treatment records from 2010 to 2013 establish that Plaintiff experienced some improvement after receiving epidural steroid injections. Id. at 374, 387, 397, 763, 783, 791-92, 795-96, 799-800, 804, 816, 821, 865, 873, 885, 892, 900. This improvement, however, was limited. Despite treatment, Plaintiff continued to experience "ongoing" "numbness," "stiffness," "tightness," "decreased range of motion," and "pain" that was "aggravated" by activity. Id. at 374-75, 387, 397-98, 762-63, 769-70, 783, 791-92, 800, 804, 816-17, 821, 865-66, 874, 884-85, 892, 900, 904. In addition, the relief that Plaintiff experienced was "temporary," lasting from "one week" to "three to four months." Id. at 375, 763, 791, 799-800. As the Ninth Circuit has explained, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison, 759 F.3d at 1017 (citing Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001)); see Guerra

v. Berryhill, 448 F. Supp. 3d 1115, 1125 (D. Nev. 2020) (recognizing Garrison addressed mental health symptoms but finding its principles equally applicable to plaintiff with waxing and waning chronic pain, and finding ALJ improperly rejected plaintiff's testimony on the basis of periods of improved pain). In fact, "[o]ccasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995).

Accordingly, Plaintiff's limited and temporary improvement with treatment is not inconsistent with his subjective complaints of impairment and, therefore, does not constitute a "specific, clear, and convincing reason[]" for rejecting Plaintiff's subjective complaints. Trevizo, 871 F.3d at 679.

### 4. Consistency with the Medical Record

Finally, the ALJ rejected Plaintiff's subjective complaints based on perceived inconsistencies with the medical record. AR at 1179-81. While it is proper for the ALJ to consider the objective medical evidence in making a credibility determination, 20 C.F.R. § 404.1529(c)(2), "[t]he ALJ may not make a negative credibility finding 'solely because' the claimant's symptom/pain testimony 'is not substantiated affirmatively by objective medical evidence.'" Karen M. v. Saul, No. 2:20-CV-06202-GJS, 2021 WL 1890785, at *4 (C.D. Cal. May 11, 2021) (quoting Robbins, 466 F.3d at 883).

As discussed above in Sections VII.C.1, VII.C.2, and VII.C.3, substantial evidence does not support the ALJ's reliance on Plaintiff's daily activities, alleged conservative treatment, or improvement with treatment as grounds for rejecting his subjective complaints. Accordingly, without an additional sufficient basis for rejecting Plaintiff's subjective complaints, the ALJ could not have relied on inconsistencies in the medical record alone. Id.

Moreover, substantial evidence does not support the ALJ's finding that Plaintiff's subjective complaints of impairment are inconsistent with the objective medical record. The ALJ found the evidence in the record established Plaintiff had "a

16

significant ability to sit, stand, walk, lift and carry." AR at 1181. The treatment records from 2010 to 2013, however, show Plaintiff consistently reported his neck pain was "aggravated" by activity, including "prolonged" sitting, walking, sleeping, stretching, bending, standing, cleaning, and "other various movements in the course of his activities of daily living." Id. at 763, 770, 792, 796, 800, 804, 821, 866, 870, 874. Plaintiff also consistently reported his back pain was "aggravated" by "prolonged periods" of walking, sitting, driving, standing, bending, pushing, pulling, and lifting. Id. at 387, 763, 766, 770, 792, 796, 800, 804, 821, 866, 870, 874, 900. In addition, Plaintiff's treating physicians regularly noted "decreased," "limited," or "painful" range of motion in his neck and lower back. Id. at 375, 398, 784, 792, 796, 800, 804, 817, 822, 866, 870, 874, 884, 901, 905.

Therefore, the ALJ's determination that the record established Plaintiff had "a significant ability to sit, stand, walk, lift and carry," and that Plaintiff's subjective complaints were, therefore, inconsistent with the medical record is not supported by substantial evidence. Accordingly, the ALJ's perceived inconsistencies with the medical record do not constitute a "specific, clear, and convincing reason[]" for rejecting Plaintiff's subjective complaints. Trevizo, 871 F.3d at 679.

### 5. The ALJ's Error Was Not Harmless

Finally, the ALJ's error in rejecting Plaintiff's subjective complaints was not harmless, because it is not "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted). In fact, at the hearing before the ALJ, vocational expert Cathleen Spencer testified that a person with Plaintiff's vocational factors who required a ten-minute break after every hour of work would not be able to perform "[a]ny full-time competitive work" in the national economy. AR at 1231-32. Plaintiff alleged limitations that require him to take significant breaks after five to ten minutes of working with his hands and after thirty to sixty minutes of walking, standing, or sitting upright. Id. at 1208-10, 1212-14, 1218-23. Based on this record, the Court cannot

conclude the error in rejecting Plaintiff's subjective complaints was harmless. See Christopher G. v. Saul, No. 2:19-CV-06150-AFM, 2020 WL 2079972, at *7 (C.D. Cal. Apr. 30, 2020) (finding the ALJ's error in failing to include limitations on attendance and completing a normal workday in RFC limitations was not harmless where vocational expert testified "that an individual whose mental limitations caused him or her to be unproductive for more than 10% of the workday would be unemployable"); cf. Devery v. Colvin, No. 2:15-CV-08503-RAO, 2016 WL 3452487, at *5 (C.D. Cal. June 22, 2016) (noting the ALJ's erroneous failure to provide reasons for rejecting the doctor's opinions regarding claimant's limitations in areas including the ability to complete a normal workday and workweek was not harmless because the vocational expert did not testify that a hypothetical person with those limitations could work).

Because the ALJ failed to properly consider Plaintiff's subjective complaints, the ALJ's decision is not supported by substantial evidence and must be reversed.

## VIII.
## RELIEF

**A.   APPLICABLE LAW**

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation omitted). Courts have found further administrative proceedings would serve no useful purpose when an ALJ previously failed to adhere to the court's order on remand. See King v. Sullivan, 757 F. Supp. 179, 188 (E.D.N.Y. 1991) (ordering payment of benefits because, on prior remand, "the ALJ made it plain that he had no intention of making a good faith effort to comply with the order"); Valente v. Sullivan, 897 F.2d 54, 58 (2d Cir. 1990) (ordering payment of benefits when ALJ had "not followed a significant portion of our prior mandate" on

remand). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Hill, 698 F.3d at 1162 (citations omitted); see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

## B. ANALYSIS

The record has not been fully developed in this matter. The ALJ must properly consider Plaintiff's subjective complaints. If the ALJ decides Plaintiff's subjective complaints must again be rejected, the ALJ must provide sufficient reasons supported by substantial evidence for making such a determination. The Court, therefore, does not find that further administrative proceedings would serve "no useful purpose."[12] See Hill, 698 F.3d at 1162 (citation omitted). Accordingly, remand for further proceedings is appropriate.

---

[12] Plaintiff argues the Court should direct an award of benefits, rather than remand for further proceedings, because the Court previously reversed and remanded the case based on the prior ALJ's improper rejection of the opinion of examining physician Dr. Amick and, according to Plaintiff, "a different ALJ has again demonstrated an unwillingness . . . to properly consider and apply" Dr. Amick's opinion. JS at 13. The Court previously found the first ALJ wholly rejected Dr. Amick's opinion without clear and convincing reasons for doing so. See AR at 1309-15. Plaintiff now alleges the second ALJ purported to give Dr. Amick's opinion "some weight" but nonetheless failed to incorporate Dr. Amick's opinion into the ultimate RFC finding. See JS at 6. While the Court declines to decide whether the second ALJ properly considered Dr. Amick's opinion on remand, see supra note 5, even assuming the truth of Plaintiff's allegations, the alleged error with the second ALJ's consideration of Dr. Amick's opinion does not constitute a failure to comply with the Court's prior remand order warranting reversal for payment of benefits, because the second ALJ does not appear to have blatantly disregarded the remand order or deliberately refused to comply with the order. Cf. King, 757 F. Supp. at 182-83, 188 (reversing for payment of benefits when, at hearing on remand, ALJ "expressed a blatant disregard for the remand order" and "did not act in good faith in evaluating the evidence"); Ischay v. Barnhart, 383 F. Supp. 2d 1199, 1224 (C.D. Cal. 2005) (reversing for payment of benefits when ALJ "simply ignored" court's instructions on remand); Holst v. Bowen, 637 F. Supp. 145, 145-46 (E.D. Wash. 1986) (reversing for payment of benefits when ALJ "acknowledged the Court's directions" on remand but "deliberately refused to abide by such directions on the basis that the Court was wrong").

19

## IX.
## **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: September 22, 2022

_____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge

20